```
               IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TEXAS (EL PASO)
```

UNITED STATES OF AMERICA,     .   Case No.: 3:25-MJ-00283-MAT
                              .
            Plaintiff,        .   El Paso, Texas        **FILED**
                              .
            vs.               .                    February 14, 2025
                              .                 CLERK, U.S. DISTRICT COURT
                              .                 WESTERN DISTRICT OF TEXAS
DAIKELY YULIANYS              .
LOPEZ-CEDENO,                 .            BY: _____Belinda Gamez_____
                              .                                  DEPUTY
            Defendant.        .   Wednesday, January 29, 2025
. . . . . . . . . . . . . . . .   9:13 A.M.

          TRANSCRIPT OF PRELIMINARY AND DETENTION HEARING
               BEFORE THE HONORABLE MIGUEL A. TORRES
                UNITED STATES MAGISTRATE COURT JUDGE

APPEARANCES:

For the Government:      United States Attorney's Office
                         BY: JOHN JOHNSTON, ESQUIRE
                         700 East San Antonio Avenue, Suite 200
                         El Paso, Texas 79901


For the Defendant:       Office of the Federal Public Defender
                         BY: JOSE MONCAYO, ESQUIRE
                         700 East San Antonio Avenue
                         Suite D-401
                         El Paso, Texas 79901


For the Interpreter:     B. Espinosa

Deputy Clerk:            Fidel Morales
                         United States District Court
                         525 Magoffin Avenue, Suite 105
                         El Paso, Texas 79901


Transcription Service:   Liberty Transcripts
                         9107 Topridge Drive
                         Austin, Texas 78750
                         (847) 848-4907
                         DBPATEL1180@GMAIL.COM
                         www.libertytranscripts.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

<div align="center">INDEX</div>

                                                        <u>Page</u>

Case called                                                3
Argument on Probable Cause
By: Mr. Johnston                                          17
By: Mr. Moncayo                                           18
Court's Ruling on Probable Cause                          19

Argument on Government's Motion To Detain
By: Mr. Johnston                                          19
Court's Ruling on Government's Motion To Detain           20

End of Proceedings                                         20
Certificate of Transcriber                                20

<u>WITNESSES</u>:

<u>FOR THE GOVERNMENT</u>:

JUAN MARTINEZ
  Direct Examination By Mr. Johnston)                     4
  Cross-Examination By Mr. Moncayo)                       10
  Redirect Examination By Mr. Johnston)                   15
  Recross-Examination By Mr. Moncayo)                     10

<u>FOR THE DEFENDANT</u>:

(None)

<u>EXHIBITS</u>:                                          <u>Marked</u>   <u>Admitted</u>

<u>FOR THE GOVERNMENT</u>:

(None)

<u>FOR THE DEFENDANT</u>:

(None)

1    **EL PASO, TEXAS, WEDNESDAY, JANUARY 29, 2025, 9:13 A.M.**

2              THE COURT:  Okay.  We are going to proceed with

3    Ms. Lopez next.  All right.  The Court calls EP:25-M-283,

4    United States of America versus Daikely Yulianys

5    Lopez-Cedeno.  We're here for a preliminary and detention

6    hearing.  Let me have announcements of counsel, please.

7              MR. JOHNSTON:  Good morning, Your Honor.

8              John Johnston on behalf of the United States;

9    ready.

10             THE COURT:  Good morning.

11             MR. MONCAYO:  Good morning, Your Honor.

12             Jose Moncayo on behalf of Daikely Yulianys

13   Lopez-Cedeno; ready to proceed.

14             THE COURT:  All right.  Good morning.

15             Pursuant to the Due Process Protection Act, the

16   Government is put on notice as to its disclosure obligations

17   under the Supreme Court precedent of Brady v. Maryland.  The

18   failure to comply with those obligations on the part of the

19   Government could result in sanctions on the Government.  A

20   written notice to this effect will follow this hearing.

21             Okay.  Call your first witness, please.

22             MR. JOHNSTON:  Your Honor, the Government calls

23   Juan Martinez.

24             MR. MARTINEZ:  Good morning.

25             THE COURT:  All right.  Good morning.

Martinez - Direct

| | |
|---|---|
| 1 | JUAN MARTINEZ, GOVERNMENT'S WITNESS, SWORN |
| 2 | THE COURT:  All right.  Have a seat, please. |
| 3 | DIRECT EXAMINATION |
| 4 | BY MR. JOHNSTON: |
| 5 | Q    Sir, would you please tell the Court your name and |
| 6 | please spell your last name for the record. |
| 7 | A    My name is Juan Martinez.  Martinez is spelled |
| 8 | M-A-R-T-I-N-E-Z. |
| 9 | Q    And with whom are you currently employed? |
| 10 | A    I'm employed with ICE OPR, Office of Professional |
| 11 | Responsibility. |
| 12 | Q    And what's your position with ICE Office of Professional |
| 13 | Responsibility? |
| 14 | A    I'm a criminal investigator or a special agent |
| 15 | Q    And are you familiar with the case regarding |
| 16 | Ms. Lopez-Cedeno? |
| 17 | A    Yes, sir.  I am. |
| 18 | Q    And how did you come to be familiar with that case? |
| 19 | A    I am the case agent, and I'm the responding agent, sir. |
| 20 | Q    All right.  And would you please tell us about the |
| 21 | events of January 14th, 2025? |
| 22 | A    Yes, sir.  On January 14th -- I'm going to back up one |
| 23 | day.  On January 13th, Ms. Lopez was released or she was here |
| 24 | at the Court and she was given time served for a U.S.C. 1325 |
| 25 | for being illegally in the country.  And she was released |

Martinez - Direct

1  from Sierra Blanco on the 14th.

2          On January 14th, she was transferred over to El

3  Paso Service Processing Center.

4  Q    And will you please tell the Court what's the El Paso

5  Processing Center?

6  A    El Paso Service Processing Center is the ICE immigration

7  detention center, and this is where they hold immigration

8  detainees for administrative purposes such as waiting for

9  their travel arrangements once deported from the country or

10  to hold immigration hearings.

11          THE COURT:  And I'm sorry for interrupting.  Is

12  this basically the camp over near Hawkins and Montana?

13          THE WITNESS:  Yes, sir.

14          THE COURT:  Okay.

15          THE WITNESS:  It's 8915 Montana in the Western

16  District of Texas, sir.

17          THE COURT:  And just one more time.  So she was

18  sentenced to time served.  She goes from Marshals custody to

19  the custody of what agency again?

20          THE WITNESS:  ICE ERO.

21          THE COURT:  ICE ERO on the 14th, correct?

22          THE WITNESS:  Yes, sir.

23          THE COURT:  Okay.  Sorry about that.  Go ahead.

24  BY MR. JOHNSTON:

25  Q    And so, in other words, she had finished her criminal

1  proceedings and now this was the administrative side in

2  reference to her deportation?

3  A    Yes. sir.

4  Q    Okay.  And what happened after she was in ICE ERO

5  custody?

6  A    On the 14th, she was -- she was in the female processing

7  area with the new arrivals.  The contract detention officers

8  were trying to get her to -- get her to changes clothes, take

9  a shower so they can go through their proceedings in

10 processing and go see medical and then -- and then get

11 properly processed.  She -- she was --

12 Q    Did she comply?

13 A    She was not compliant, sir.

14 Q    And how was she not compliant?

15 A    She told the contract detention officers that she was

16 not moving, she was not going anywhere, and that they would

17 have to move her by force.

18 Q    What happened next?

19 A    More officers arrived, and they tried to -- they tried

20 to talk to her.  They tried to calm her down.  She was still

21 not compliant with -- with demands, so two contract officers

22 grabbed her from the arm and moved her to a single cell so

23 she stopped making that disruption.

24         When she was in the single cell, she started trying

25 to kick the officers.  She was trying to head-butt the

1  officers.  One of the officers placed her arm on the way and
2  that is when Ms. Lopez bit her in the arm.
3  Q    Okay.  And would you please describe the bite wound?
4  A    The bite wound was in the right forum.  The officers
5  wearing approximately three layers of clothing to include a
6  jacket, a sweater, and a long-sleeve shirt.  The bite wound
7  was redness, there was redness.  There was an arch mark from
8  the teeth, and then there was also a puncture where they
9  broke the skin.
10 Q    What medical treatment did the office require after the
11 bite wound?
12 A    The medical officer went to a local hospital to get
13 treatment.  The officer ended up getting a prophylaxis
14 treatment for possible HIV, tetanus, and other -- other
15 diseases that she can get from a human bite.
16 Q    What happened next?
17 A    Ms. Lopez was escorted.  She was placed in handcuffs and
18 escorted to a padded cell until she calmed down.  And then
19 she was talked to by the staff, and she agreed to comply and
20 change and finish in processing.
21 Q    And at some point, then, did you respond to the scene?
22 A    Yes, sir.  I responded on the 16th.
23 Q    Okay.  And what happened on the 16th?
24 A    On the 16th, I went to interview Ms. Lopez.  At the
25 time, she was confrontational.  She -- right off the bat, I

Martinez - Direct

1  was setting up my camera and she was screaming saying she

2  does not want to be on video, she does not want to be

3  recorded, she does not agree.  And she was requesting to

4  speak to her deportation officers and saying that she wants

5  to go to Mexico now.

6  Q    Did you advise her of her Miranda rights?

7  A    Yes, sir.  I did.

8  Q    What did she say?

9  A    She stated that she was on the 14th, on January 14th

10  after I read her her rights --

11  Q    Let me stop you there.  Did she agree to talk to you

12  first?

13  A    Yes, sir.  She did.

14  Q    Okay.  And what did she tell you?

15  A    She said on the 14th, she was frustrating because she

16  didn't know what her situation was.  And she was demanding to

17  know what was going to happen with her case.

18  Q    And did she tell you why she reacted so harshly?

19  A    She stated she -- she bit the officer because they were

20  hurting her.

21  Q    And did you receive any reports or any injuries -- that

22  she had any injuries from this incident?

23  A    They -- there's post pictures, they took pictures of her

24  arms and her -- and her neck.  She did see medical.  There

25  was no -- no injuries, sir.

Martinez - Direct

1  Q    Okay.  And did you take pictures of the bite wound?

2  A    The officers on the scene did, sir.  Yes, sir.

3  Q    Okay.  So that's been photographed?

4  A    Yes, sir.

5  Q    Okay.  And you mentioned that you interviewed Ms. Lopez.

6  Do you see Ms. Lopez in the courtroom today?

7  A    Yes, sir.  I do.

8  Q    Would you please tell the Court where Ms. Lopez is

9  sitting and would you please describe for us an article of

10 clothing that she's wearing?

11 Q    Ms. Lopez is sitting next to her attorney.  She's

12 wearing a blue jumpsuit, black hair, and she's sitting in the

13 farthest from the -- from the judge.

14          MR. JOHNSTON:  Your Honor, may the record reflect

15 that Agent Martinez has identified the Defendant?

16          THE COURT:  The record will so reflect.

17          MR. JOHNSTON:  May I have a moment, Your Honor?

18          THE COURT:  Yes, sir.

19          MR. JOHNSTON:  Pass the witness.

20          THE COURT:  All right.  Mr. Moncayo?

21                    CROSS-EXAMINATION

22 BY MR. MONCAYO:

23 Q    All right.  Agent Martinez, okay, so --

24          THE CLERK:  Mr. Moncayo?

25          THE COURT:  Could you close to the mic?  Thanks.

Martinez - Cross

1    BY MR. MONCAYO:

2    Q    Agent Martinez?

3    A    Yes, sir.

4    Q    Okay.  So you testified that you interviewed her January

5    16?

6    A    That is correct.

7    Q    And the incident, the alleged incident occurred January

8    14th?

9    A    That is correct.

10   Q    So you went to go interview two days after the incident

11   had occurred?

12   A    Yes, sir.

13   Q    And according to you, Ms. Lopez had explained to you

14   that she still didn't know what her status was as far as

15   being -- when she was going to be deported?

16   A    That is correct.

17   Q    Did you give her that information?

18   A    Sir, I told her --

19   Q    Yes or no?

20   A    No.

21   Q    Okay.

22   A    I told her I'm not her deportation officer.

23   Q    So I understand that.  So after that -- so she had been

24   transferred January 14th to the ICE detention facility for

25   processing and deportation.  She still was not aware of what

Martinez - Cross

1    her status was for when she was going to be deported and all

2    she wanted to know was that answer.  And according to your

3    reports, nobody, not even the guards, provided her with that

4    information?

5              THE COURT:  Is that a question?

6              MR. MONCAYO:  That is a question, Your Honor.

7              THE COURT:  So what's the question again?  I

8    mean --

9              MR. MONCAYO:  The question is, Your Honor, if any

10   guards from the time that she was processed in to the time

11   that Mr. -- that Special Agent Martinez showed up, if anybody

12   provided her with the information as to when she was going to

13   be deported.

14             THE COURT:  How is that relevant?

15             MR. MONCAYO:  It's relevant, Your Honor, because

16   that goes to the whole issue that Ms. -- excuse me, Ms. Lopez

17   explained to Special Agent Martinez as to why she became

18   frustrated.

19             THE COURT:  That she did not know when her

20   deportation was going to happen?

21             MR. MONCAYO:  Correct, Your Honor.

22             THE COURT:  Okay.  I mean, ask the question and --

23   but let's move on from that.

24             MR. MONCAYO:  Right.

25             THE WITNESS:  Sir, I cannot answer that, who talked

Martinez - Cross

1   to her and what they told her, sir.

2   BY MR. MONCAYO:

3   Q    Okay.  And how many officers did it take to restrain

4   Ms. Lopez?

5   A    When I saw the video, there were two officers, each one

6   on each side.  And when they put her in a single cell, there

7   was a third one that came in to put in the handcuffs.

8   Q    So it was two officers?

9   A    It was three inside the cell to place her in handcuffs.

10  Q    Okay.  And who were those three officers?

11  A    I would have to look for their names, sir.  I don't know

12  them off the bat right now.

13  Q    And that -- and you have cameras in that facility,

14  correct?

15  A    There are cameras in the facility, sir.

16  Q    And you've had a chance to review those videos?

17  A    Yes, sir.  I did.

18  Q    And those videos capture the whole alleged incident

19  between Ms. Lopez and the guards?

20  A    No, sir.  Because privacy purposes, there's no cameras

21  inside the cell, sir.  For privacy purposes.

22  Q    Okay.

23  A    This is an area where they have to get dressed, shower,

24  and -- and for privacy purposes, there's no cameras in there.

25  Q    And according to what you stated earlier, the officers,

Martinez - Cross

1   the ICE officers, wanted Ms. Lopez to take a shower?

2   A    Yes, sir.

3   Q    She refused?

4   A    That is correct.

5   Q    And she was being forced to take a shower then?

6   A    She was not forced to take a shower.  She was forced to

7   move into another cell.

8   Q    At that point, she refused to get moved to another cell?

9   A    That is correct.

10  Q    And they forcefully removed her?

11  A    Yes, sir.

12  Q    And were you aware or did you know that Ms. Lopez

13  suffered sexual trauma when she was 13 years old?

14            MR. JOHNSTON:  Objection.  Relevance.

15            THE COURT:  Sustained.

16  BY MR. MONCAYO:

17  Q    What techniques were used to restrain her forcefully?

18  A    They grabbed her from the arm and they did an arm-bar on

19  each side to escort her to move forward.

20  Q    What's an arm-bar?

21  A    They grabbed her from the -- from the wrist and the arm.

22  Q    They grabbed her from the wrist and the arm?

23  A    Yes.

24  Q    One on each side?

25  A    That is correct.

Martinez - Cross

1    Q    And the arm-bar that you suggested, is it to push her

2    down to the ground?

3    A    It's -- it's to get her to comply. and at the point they

4    were trying to move her from point A to point B.

5    Q    Okay.  So they used -- so they're using pain?

6    A    I would say it's fair and comfortable.

7    Q    Okay.  And so it's possible that in trying to -- in this

8    uncomfortability [sic] position that she's in, that she felt

9    the need to defend herself?

10   A    I don't know, sir.

11   Q    It's possible?

12   A    It's possible.

13          THE COURT:  Anything's possible.  Let's move on.

14          MR. MONCAYO:  Thank you, Your Honor.

15   BY MR. MONCAYO:

16   Q    And you stated there were pictures taken of Ms. Lopez

17   because of the force that had been used on her, correct?

18   A    That is correct.

19   Q    And they took pictures of her neck?

20   A    They took pictures of her head, her neck, and her -- her

21   arms.

22   Q    Okay.  Now they took pictures of her neck.  You said

23   they held her down by the arms but, yet, they took pictures

24   of her neck.  Was that because one of the guards had their

25   arm around her neck?

Martinez - Redirect

1  A    No, sir.  It was just -- it wasn't -- it shows her head,

2  her neck, and her arms.

3  Q    And you stated the bite, the picture of the bite, showed

4  redness, a large mark from teeth, and a puncture?

5  A    There's a puncture.  Yes, sir.

6  Q    Okay.  So it was left arm or right arm of the guard?

7  A    It was her right arm.

8          MR. MONCAYO:  No further questions, Your Honor.

9          THE COURT:  All right.  Any other questions,

10  Mr. Johnston?

11          MR. JOHNSTON:  Briefly, Your Honor.

12                  REDIRECT EXAMINATION

13  BY MR. JOHNSTON:

14  Q    Agent Martinez, based on training that guards and law

15  enforcement are given, do the officers immediately every time

16  they have contact with a detainee, do they immediately use an

17  arm-bar during that encounter?

18          MR. MONCAYO:  Objection, Your Honor.  It calls for

19  speculation and outside the scope.  Agent Martinez was not

20  there until two days after, so he cannot possibly give an

21  answer as to what officers actually do after -- you know, in

22  certain situations, Your Honor.

23          THE COURT:  Well, I'm going to overrule that.  I

24  mean, if he discussed it with the officers involved and if he

25  knows, he can answer.

Martinez - Redirect

```
 1           THE WITNESS:  Sir, the officers were called because
 2    he was not compliant, and they tried to de-escalate it.  They
 3    tried to talk to her.  They were asking her to comply.  She
 4    did not comply, so then they're telling her now and then
 5    they're making her.  So slowly -- that is not their first
 6    course of action.
 7    BY MR. JOHNSTON:
 8    Q    So they used verbal commands first?
 9    A    Yes.
10    Q    Working through a use-of-force model during their
11    interaction with the Defendant?
12    A    Correct.
13           MR. JOHNSTON:  No further questions.
14           MR. MONCAYO:  I have one more, Your Honor.
15           THE COURT:  All right.  One more.
16                     RECROSS-EXAMINATION
17    BY MR. MONCAYO:
18    Q    Agent Martinez, why did she have to be moved to another
19    cell?
20           MR. JOHNSTON:  Objection.  Beyond the scope of
21    redirect.
22           THE COURT:  Sustained.
23           MR. MONCAYO:  Your Honor, the attorney just -- the
24    Prosecutor just talked about policies and what they did
25    before they moved her to another cell, that they were talking
```

1  to her and tried to calm her down, supposedly.  And so I

2  think it is related exactly within the scope of his

3  cross-examination asking why, the reason why she needed to be

4  moved at all.  I think it is relevant, Your Honor.

5           THE COURT:  I'm sustaining the objection.

6           MR. MONCAYO:  Thank you, Your Honor

7           THE COURT:  All right.  You may step down.

8           THE WITNESS:  Thank you.

9        (Whereupon, the witness was excused.)

10          THE COURT:  Any other witnesses or evidence?

11          MR. JOHNSTON:  No, Your Honor.

12          THE COURT:  Mr. Moncayo, do you have any witnesses

13  or evidence?

14          MR. MONCAYO:  No, Your Honor.

15          THE COURT:  All right.  Let me hear argument,

16  please.

17          MR. JOHNSTON:  Your Honor, the facts in this case

18  are simple.  The Defendant was detained for immigration

19  purposes.  She was given a verbal command, refused that

20  verbal command, the use-of-force model was followed.  They

21  went to an arm-bar.  During the course of that arm-bar, she

22  bit the officer.  That bit was so severe that it broke the

23  skin, requiring medical treatment, tetanus, HIV testing, all

24  of those other things.  And so for those reasons, we believe

25  that there is probable cause regarding the assault on the

1   officer.

2           THE COURT:  All right.  Thank you.

3           Mr. Moncayo?

4           MR. MONCAYO:  Your Honor, this is clearly a case of

5   self-defense.  Ms. Lopez was being arm-barred just because

6   their officers or agent does not give them the right to use

7   excessive force and that's what was being used.

8           Your Honor, as the Court can clearly see, she is

9   not a big woman.  She is about less than 160 pounds, Your

10  Honor.  And to sit here and say that she needed to be

11  arm-barred without explaining the need to why they even had

12  to move her in the first place, Your Honor, and come back and

13  say, well, the model was used, there's still the details to

14  show that excessive force was used on her.  She reacted in

15  self-defense.

16          Once an officer goes beyond the use of reasonable

17  force, Your Honor, and here we have a case were Ms. Cedeno

18  was being arm-barred by two people to the point where they

19  had to take pictures not only of her arms where, according to

20  the agent, that's the only location they had ahold of her,

21  but they took a picture of her head and neck.

22          I believe there's more details to this, Your Honor,

23  and I believe there's more stuff that will come out in the

24  evidence.  But the thing is, Your Honor, we believe that

25  excessive force was used here and Ms. Cedeno was --

1  Ms. Lopez, excuse me, was defending herself, Your Honor.  I'd

2  ask the Court --

3        THE COURT:  But let me understand your argument.

4  You're saying that an arm-bar, which is an arm restraint and

5  that's the evidence that we heard in the testimony, I mean is

6  your argument that a bite that breaks the skin an appropriate

7  defensive response to that?

8        MR. MONCAYO:  Your Honor, it's self-defense.  I

9  can't sit here and tell you that a bite is rational to an

10  arm-bar in relation to an arm-bar.  I can't sit here and tell

11  you that if they were kicking her or had her in a headlock --

12        THE COURT:  No evidence of that.

13        MR. MONCAYO:  I'm saying, Your Honor, that, yes,

14  Defense believes that this is her act of self-defense.

15  Scared, fear, traumatized from events that happened earlier

16  in her life, Your Honor.  So we believe that she acted

17  accordingly, regardless of the fact that they are officers,

18  Your Honor.  This is her way of defending herself.

19        THE COURT:  All right.  Thank you.

20        All right.  The Court does find probable cause.

21        With regard to detention, is there anything the

22  Government wishes to argue?

23        MR. JOHNSTON:  Your Honor, I think as was laid out

24  during the direct examination of Agent Martinez, that she was

25  in the country illegally, she has a prior immigration

1    conviction, and was subject to deportation.  So the

2    Government would honor -- would argue that she's a flight

3    risk as well as a danger to the community, as evidenced by

4    the crime charged.

5              THE COURT:  All right.  Very well.

6              MR. MONCAYO:  No argument, Your Honor.

7              THE COURT:  All right.  Very well.

8              The Court will grant the Government's motion to

9    detain.  I do find by clear and convincing evidence that the

10   Defendant represents a danger to the community.

11             All right.  Anything else on this case,

12   Mr. Moncayo?

13             MR. MONCAYO:  No, Your Honor.

14             THE COURT:  Anything else, Mr. Johnston?

15             MR. JOHNSTON:  Nothing, Your Honor.

16             THE COURT:  All right.  We are in recess on this

17   case.

18             (Whereupon, at 9:34 a.m., the proceedings

19   adjourned.)

20                        *  *  *  *  *

21

22

23

24

25

```
 1                            CERTIFICATE

 2        I, DIPTI PATEL, court-approved transcriber, do hereby

 3   certify that the foregoing is a correct transcript from the

 4   official electronic sound recording of the proceedings in the

 5   above-entitled matter.

 6

 7

 8

 9   _____

10   DIPTI PATEL, AAERT CET-997

11   Expires: December 6, 2026

12   LIBERTY TRANSCRIPTS              Dated: February 13, 2025

13

14

15

16

17

18

19

20

21

22

23

24

25
```